SARAH SCOTT v. THE TRUSTEES OF THE FIRST FREE METHO-
DIST CHURCH OF JACKSON, HIRAM HASKINS AND
HENRY J. PETERS.

*Religious societies—Mortgage of church property by trustees—Ratification—
Record proof—Parol evidence.*

Comp. L. § 3062 gives church trustees "authority under the direction of the society, to *sell and convey*, *mortgage or lease* any real estate belonging to such society" providing "no such *sale or conveyance*" shall be made unless the assent of two-thirds of those present at any meeting specially called for the purpose should be obtained. *Held* that this does not require a two-thirds vote as a condition to a mortgage.

Comp. L. § 3065 provides that any two of the trustees of a religious society may lawfully call a meeting of the trustees, a majority of whom, when *lawfully convened*, can do anything which the trustees are authorized to do. *Held* that when two out of three trustees have come together without notice to any one else, and unite in executing a mortgage on the church property, they are lawfully convened for that purpose.

A religious society that has power to direct its trustees to take action, and can assent thereto by a majority of its members, can ratify action which the trustees have taken without any preliminary direction or assent, and if no rights have intervened such ratification relates to the date of the act.

A religious society's ratification of an act of its trustees need not be by a direct proceeding with an express intent to ratify, but may be effected indirectly and by acts of recognition or acquiescence, or acts inconsistent with repudiation or disapproval, as by taking advantage of the act, permitting action to be taken on it without objection, or making payments in pursuance of it.

A society that is sued upon its own obligations cannot take advantage of its own neglect to keep records, to object that record proof of its proceedings is not produced to establish its liability. The party

bringing suit can resort to such evidence as is obtainable when the party sued has put it out of his power to produce record evidence.

Proof that the action of the trustees of a religious society in giving a mortgage has been ratified by the society is admissible under a foreclosure bill alleging that the society gave the mortgage.

Where the trustees of a religious society have mortgaged its property without signing the mortgage in proper form, parol evidence is admissible to charge the society as the principal in the mortgage.

Appeal from Jackson. (Gridley, J.) April 25.—June 6.

FORECLOSURE. The defendant church appeals. Affirmed.

*Lewis M. Powell* for complainant. A mortgage executed by the trustees to secure a debt of the society is binding on the corporation, without a formal resolution of the board: *Manning v. Moscow Pres. Soc.* 27 Barb. 52; *Kendallville M. E. Church v. Shulze* 61 Ind. 511; the proceedings of the meetings of a corporation should be proved by the record, but where there is no record kept, as in this case, the proceedings may be proved by parol: *Walrath v. Campbell* 28 Mich. 112; Angell & Ames on Corporations (6th ed.) § 291 *a.*; *Kendall v. Kingston* 5 Mass. 531; *Langsdale v. Bontou* 12 Ind. 467; a corporation cannot disaffirm a contract as to those parts which impose an obligation and affirm it so far as it operates to its advantage: *Davenport etc. Assoc. v. North American Ins. Co.* 16 Iowa 74; *Peninsular Bank v. Hanmer* 14 Mich. 208; if a corporation accepts the benefit of a contract negotiated for them this will operate as a ratification: *Shaver v. Bear River etc. Min. Co.* 10 Cal. 396; *Episcopal etc. Society v. Episcopal Church* 1 Pick 372; *Brown v. Winnisimmet Co.* 11 Allen 326.

*Thomas A. Wilson* for defendant trustees. Separate action of individual trustees, although a majority, is not sufficient to bind a religious corporation: *M. E. Church v. Sherman* 36 Wis. 404; *D'Arcy v. Tamar etc. Ry. Co.* L. R. 2 Ex. 158; *Hazen v. Lerche* 47 Mich. 626.

GRAVES, C. J. The defendant first mentioned is a religious corporation organized in May, 1875, under the general statute concerning "Religious Societies," Comp. L. ch. 108 ; and the complainant files this bill to obtain foreclosure of a mortgage alleged to have been given to her by the society on their meeting house and lot on the 21st of March, 1877. The usual decree of sale was granted by the circuit court, and the society appealed.

The general question in the case is whether in the state of facts presented the mortgage is a valid claim and lien against the society, and this general question depends on some minor ones.

The trustees were three in number, but one was absent in the state of New York. The other two, being the defendants Haskins and Peters, joined in executing the mortgage and an accompanying note, and Mr. Haskins, with the acquiescence of Peters, received the money from Mrs. Scott, and subsequently applied it to the use of the society. On the part of the complainant the loan was made in good faith and under a belief that the transaction was just and regular, and the good faith of Haskins and Peters, in getting the money and in giving the securities is not impeached.

The first and principal objection may be thus stated : the vote or assent of at least two-thirds of the voting members present at a meeting of the society duly and specially called for that purpose, was an indispensable preliminary to the giving of the mortgage, and there was no such vote or assent. Therefore, the mortgage at its inception was inoperative. Comp. L. § 3062 and *Walrath v. Campbell* 28 Mich. 111, are cited.

Although the proper result here does not depend upon whether the statement in the case cited, on which reliance is placed, is accurate, I propose to notice that statement lest my silence should be thought to imply an assent to it. The power of a religious society to mortgage its land is there spoken of in terms which were not called for by the case nor borne out by the statute. The section declares *first,* that the trustees shall have authority under the direc-

tion of the society to sell and convey, mortgage or lease any real estate belonging to such society, etc.   Here three kinds of disposition are distinctly authorized under the direction of the society—1st, to grant away the entire estate—2d, to lease—and 3d, to encumber by mortgage.   All the power so given remains and in the precise shape so marked out, except in so far as abridged or qualified by the proviso. But the proviso does not apply at all to a disposition by mortgage.   That is left to the sole operation of the body of the section.   The proviso significantly drops the terms "mortgage" and "lease" [or *release* as inaccurately published] and then says that "no such *sale or conveyance* shall be made in any case—unless the vote or assent of at least two-thirds of those present and entitled to vote at any meeting of the society duly and specially called for that purpose, shall be obtained therefor."   It may be said that the introduction of the word "or" indicates that the term "conveyance" was intended here to have a broader meaning than in the body of the section ; but there is no substance in this suggestion.   The probability is that "*or*" should be read as though it were "*and*," a very common necessity in construing statutes.   But however this may be it would be quite extravagant to say that although the framers of the proviso by evident design left out these words *mortgage* and *lease*, it was yet intended by putting in "or" in place of "and" to compel the clause to carry the same sense and restrict the body of the section in the same way as though the neglected terms had been inserted.   I think therefore that the passage in *Walrath v. Campbell* which supposes that the proviso applies to dispositions by way of mortgage is a mistake and one likely to mislead.

Haskins and Peters were a majority of the trustees, and when they came together and united in executing the papers they were lawfully convened within the statute.   Comp. L. § 3065. *

---

*3065, Sec. 12.   Any two of the trustees may at any time call a meeting of the trustees, and a majority of them, being lawfully convened, shall be competent to do and perform all matters and things which such trustees are authorized to do and perform; etc.

No particular ceremony was necessary. The matter before them required no previous notice to others of time and place. Their duty for that occasion only involved such mutual concert and consultation as they wanted in order to conclude the affair. *Eureka Co. v. Bailey Co.* 11 Wall. 488. They were satisfied with their opportunity, and that is sufficient. There was no one else to be consulted or accommodated.

The case contains much evidence that the mortgage was given under the direction of the society—but let it be conceded that this fact is not made out, and let it be further admitted that, as suggested in *Walrath v. Campbell*, sup., it was a provision of the statute that the prior assent should be obtained of two-thirds of the voting members, and that no such assent was given. As the society had power to direct the trustees, and was capable of assenting by any majority of the members willing to concur, so it had power and capacity to ratify the act of the trustees if done without a prior direction or without a preliminary assent of two-thirds. *M'Laughlin v. Detroit & Milwaukee Ry. Co.* 8 Mich. 100; *Taymouth v. Koehler* 35 Mich. 22; Brice's U. V. by Green 471. And where there are no intervening rights, as in this case, the ratification enures to the date of the act ratified. It is not necessary that there should be a direct proceeding with an express intent to ratify. It may be done indirectly and by acts of recognition or acquiescence, or acts inconsistent with repudiation or disapproval. Brice 467 et seq; *Sherman v. Fitch* 98 Mass. 59; *Lyndeborough Glass Co. v. Mass. Glass Co.* 111 Mass. 315; *Brown v. Winnisimmet Co.* 11 Allen 326; *Arlington v. Peirce* 122 Mass. 270; *Hoyt v. Thompson's Ex'r* 19 N. Y. 207; *Scott v. Middletown etc. R. Co.* 86 N. Y. 200; *Gold Mining Co. v. National Bank* 96 U. S. 640; *Law v. Cross* 1 Black 533; *Moss v. Rossie Lead Mining Co.* 5 Hill 137; *Farmers' Loan & Trust Co. v. Walworth* 1 Comst. 433.

We have seen that the money was obtained by the trustees for the use of the society, and we have also seen that the society had the benefit of it. It was in fact hired to

complete the meeting house then in course of erection and was applied to that purpose, and that house is now occupied and has been by the members as a place of worship. The society certainly knew of the mortgage when the loan was made, but it allowed the money to be expended for its benefit without uttering any dissent whatever to the complainant. She was allowed to repose upon the security as an authorized obligation of the society. But this is not all. The house was dedicated in April, 1877, and soon after and in the same month the treasurer of the society paid $100, and in March of the next year $30 for interest. It would be a waste of time to recite all the circumstances bearing on the question. They compel the belief that the whole membership recognized the mortgage as a good debt for which the society was liable. The ratification is fully made out within the authorities cited. Whatever discussions may have arisen among the members, or whatever reason there may have been for thinking that the meeting house cost too much, they were matters with which the complainant had no concern and were foreign to her rights.

A few words here respecting objections to the style of proof. It is the society itself and not some third party that contests and denies its obligation, and objects that complainant does not produce primary or record proof of its meetings and proceedings to demonstrate its liability. In view of what is palpable and cannot be disputed or even questioned, this method of defence by any sort of an association would be very ungracious, and the impression is little less than painful on hearing it from a body designedly organized to aid in fostering and disseminating the sublimest principles of life and conduct. The fact is that neither the society nor the trustees, nor the treasurer, have ever kept any regular—or indeed for the most part, any kind of record of meetings or proceedings, and it would be a gross reflection on that justice which the civil courts administer to let it make use of its own neglect or that of its officers and agents in this regard as a means to defeat the claim of an honest creditor. It ought not to be a gainer by its own care-

lessness or laches. If either side should suffer from this delinquency it should not be the party who has not been in fault.

The general rule is that the party is only to produce the best evidence in his power, and if the society has by means of its own carelessness, negligence or other fault, disabled the complainant from finding and adducing record evidence it is then her right to resort to such other as she can lay hold of. See references in Abbott's Trial Evidence pp. 39, 47, 48, 49, 50, 51.

The point is made that under the allegations in the bill proof of ratification is not admissible. The contrary is directly ruled in *Hoyt v. Thompson's Ex'r*, supra.

A further objection is that the trustees did not sign in a proper form to bind the society. This comes rather late after having ratified the transaction as its own. But suppose it were otherwise and suppose further that the mode of signing were admitted to be wanting in technical accuracy, there would be no legal objection in proceeding to charge the society as a principal by parol proof. *Coleman v. Bank* 53 N. Y. 388; *Trueman v. Loder* 11 A. & E. 595; *Ford v. Williams* 21 How 287; 2 Wharton Ev. §§ 937–949–950.

No error is shown in the determination of the court below, and we think the decree should be affirmed with costs.

COOLEY and CAMPBELL, JJ. concurred.