192 N.J. Super. 272 (1983)
469 A.2d 955
SANDVIK, INC., PLAINTIFF-APPELLANT, CROSS-RESPONDENT,
v.
STATEWIDE SECURITY SYSTEMS, DIV. OF STATEWIDE GUARD SERVICES, INC., DEFENDANT-RESPONDENT, CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 20, 1983.
Decided December 13, 1983.
*274 Before Judges ANTELL, JOELSON and McELROY.
Moser, Roveto, McGough and von Schaumburg, attorneys for appellant (Doreen M. Goldbronn on the brief).
Hogan and Palace, attorneys for respondent (Thomas A. Hogan on the brief).
Gorrin, Whitken & Crowley, attorneys for defendant-respondent (Clark L. McFadden on the brief).
The Opinion of the Court was delivered by, ANTELL, P.J.A.D.
Defendant, a licensed private detective agency, contracted June 28, 1974 with plaintiff, a manufacturer of tungsten carbide inserts, to provide security guard service. On January 22, 1977 the employee assigned by defendant to guard the plant on the 12:30 a.m. to 8:00 a.m. shift, William Milnes, was bribed to leave his post at 4:00 a.m. for 30 minutes. During his absence 4205 kilograms of tungsten carbide powder worth $118,000 was stolen.
The complaint herein filed alleged liability for breach of contract, two theories of negligence, and liability based on the claim that as a licensee under The Private Detective Act of 1939, N.J.S.A. 45:19-8 et seq., defendant is "accountable" for the good conduct of its employees. See N.J.S.A. 45:19-15. The trial judge, who heard the case without a jury, found a breach of contract by defendant and awarded damages of $1,994.33, being one-twelfth of the annual contract price of $23,932. On this appeal plaintiff contends that the judge applied the incorrect measure of damages, arguing that he should have allowed full recovery of all consequential losses, that is, $118,000, the value of the stolen inventory. Plaintiff also appeals from an order for summary judgment dated December 21, 1981 dismissing its *275 demands asserted in the second and third counts of the complaint for recovery grounded in negligence. On its cross-appeal defendant maintains that the trial judge erred in his finding of contractual liability.
We deal first with plaintiff's appeal from the order for summary judgment dismissing the second and third counts of the complaint. The second count alleged that plaintiff's loss resulted from the negligence of defendant through its agents, servants and employees. The third count asserted negligence in defendant's hiring and training of employees. Defendant's motion, accompanied only by a brief and without supporting certifications or affidavits, relied entirely upon the deposition testimony of its executive vice president to the effect that the employment application of William Milnes, the errant guard, was "as clean as any application I've ever seen" and that there was "no way in the world that we could have found anything wrong with this guy." As against this, plaintiff described its claim of hiring negligence in the following answer to one of defendant's interrogatories:
Defendant hired employees without investigating same for predisposition hence [sic] to criminal activities. No psychological evaluation to determine same and no program to encourage honesty or to alert employees to potential embezzlers.
Apart from the fact that a material issue was raised by the foregoing answer, counsel for plaintiff explained on the motion that she was still engaged in a search for Milnes' personnel file which, as the judge found, had been misplaced through defendant's negligence. Although plaintiff's 150 day discovery period had expired, the circumstance of the missing file should have been weighed heavily in favor of denying the motion, particularly since the facts upon which liability was predicated lay peculiarly within defendant's knowledge. Auster v. Kinoian, 153 N.J. Super. 52, 56 (App.Div. 1977).
On a motion for summary judgment it rests with the moving party to "exclude any reasonable doubt as to the existence of a factual issue," Costa v. Josey, 83 N.J. 49, 53 (1980), and "[a]ll doubts are to be resolved against the movant," Ruvolo v. *276 American Cas. Co., 39 N.J. 490, 499 (1963). Especially where a case involves significant policy considerations maximum caution must be exercised before granting summary judgment and the issue should not be resolved until a full record is developed at trial. Jackson v. Muhlenberg Hospital, 53 N.J. 138, 142 (1969). The tort of negligent hiring was formally recognized in New Jersey in Di Cosala v. Kay, 91 N.J. 159, 174 (1982), as a redressible wrong not dependent on principles of respondeat superior. Although that case was decided after summary judgment herein, the highly significant policy considerations inherent to the recognition of such a tort were carefully projected in Bennett v. T & F Distributing Co., 117 N.J. Super. 439 (App.Div. 1971), and the denial of a summary judgment based thereon was accordingly affirmed.
Finally, as to this issue, we are unable to discern the basis on which the result below was reached. R. 4:46-2 obliges the trial court on such motions to "find the facts and state its conclusions." Unfortunately, the judge below simply stated: "The motion for summary judgment is granted on both counts. Submit an order."
Under all the circumstances the motion for summary judgment should not have been granted. For reasons which will become evident from our disposition of the contract aspect of the case, the summary judgment as to the tort claims is no longer of any practical significance, but the granting thereof must nevertheless be reversed.
We agree with the trial court's finding that defendant had breached its contract with plaintiff. Defendant's argument before us is that this result conflicts with the rule that an employer is not answerable for the acts of an employee outside the scope of his employment. It maintains that Milnes' behavior, for which he was indicted and convicted on charges of embezzlement, was not in furtherance of defendant's business and therefore could not support a finding of civil liability against defendant. The argument, however, confuses an agency *277 principle applicable to tort cases with the elements of contractual liability.
The judgment under review does not impose vicarious liability arising from Milnes' wrongful conduct. It results only from defendant's failure to meet its obligation of guarding the plant. Obviously, there was no other way that defendant could perform this contract except through its employees. Whether defendant performed or failed to perform can therefore only be determined by the conduct of the employee it chose for this purpose, and Milnes' deliberate 30 minute absence from the premises supports the trial judge's finding that defendant's contractual obligation had been breached.
We find, however, that the trial judge erred in limiting recovery to the amount of defendant's fees for the month in which the theft occurred. He reasoned that because defendant had not been fully informed as to the value of the tungsten carbide powder being guarded the parties could not reasonably have intended that defendant's liability for loss resulting from breach of contract should extend to the value of stolen inventory.
The applicable rule is that generally "the prima facie measure of damages for the breach of a contract is the quantum of loss consequent thereon. The injured party is entitled to the value of the contract to him," Weiss v. Revenue B. & L. Assn., 116 N.J.L. 208, 210 (E. & A. 1936), subject to the following limitations:
First, the damages shall be those arising naturally, i.e., according to the usual course of things, from the breach of the contract, or such as may fairly and reasonably be supposed to have been in the contemplation of the parties to the contract at the time it was made, as the probable result of the breach; and, second, they must be the reasonably certain and definite consequences of the breach, as distinguished from mere quantitative uncertainty. [Ibid.]
As Williston explains, this allows recovery "for only such consequences as would follow such a breach in the usual course of events." That is, a defendant "is liable only for consequences which were reasonably foreseeable at the time when [the contract] *278 was entered into, as probable if the contract were broken." 11 Williston, Contracts (3d ed. Jaeger 1968), § 1344 at 226-27.
The consequences may have been foreseeable because they would occur in the natural course of events, or because, although unusual, the defendant knew special facts making them probable. For all such consequences, the defendant is liable whether they were actually foreseen or not, or whether even the criminal act of a third person intervenes. [Id. at 228].
The only purpose of the contract was to avoid the precise loss suffered. Although defendant might not have been specifically told the value of tungsten carbide powder, it knew that plaintiff's plant was likely to contain movable property in the form of inventory and capital assets of substantial value. Furthermore, as defendant acknowledged in a preliminary letter, it knew that plaintiff had an internal theft problem, that the purpose of the hiring was to "help abolish inventory loss," and that for this service plaintiff obliged itself to pay a yearly charge of nearly $24,000. Under the circumstances, we find unavoidable the conclusion that the inventory loss of $118,000 was a reasonably foreseeable, natural and proximate consequence of defendant's breach.
Defendant's contention that the result here reached constitutes defendant a guarantor against loss is rejected. Nowhere do we suggest that defendant's obligation to keep a guard on plaintiff's premises carries with it a guarantee against loss. Not before us for consideration is a case of the kind hypothesized by defendant wherein the security service's basic obligation to provide a guard on the premises is fulfilled, but the guard is stricken by illness or overpowered by robbers or immobilized by other factors beyond his control. We leave the question of whether a breach of contract could be found in such cases to be decided on the facts of each particular case. Here we deal only with a case in which defendant failed in its duty to provide a guard, thus committing a breach proximately related to the loss.
Our research discloses that courts which have elsewhere considered this question have reached substantially similar results. *279 In Cooper v. IBI Security Service of Florida, 281 So.2d 524 (Fla. Dist. Ct. App.), cert. den. 287 So.2d 95 (Fla. 1973), a life insurance premium collector was shot while making his collections when an armed guard failed to accompany him into a dangerous area as contracted for by the guard's employer. The complaint by the collector sought recovery of damages for injuries on the ground that the security service failed to provide the contracted for protection. On appeal from a trial court's dismissal of the complaint the Court of Appeals reversed. In so doing it stated:
It was the purpose and object of the contract to obviate or protect the plaintiff from exactly that which occurred when he went unprotected, with foreseeability and likelihood thereof, and the basis therefor, sufficiently alleged to be known to exist. On the allegations of the amended complaint it could not be held that the facts disclosed showed absence of proximate cause as a matter of law. Florida East Coast R. Co. v. Booth, Fla.App. 1963, 148 So.2d 536; Homan v. County of Dade, Fla.App. 1971, 248 So.2d 235. In Homan the Court said: "Foreseeable acts of third persons are not superseding causes which insulate a prior tort feasor from liability as a matter of law, where such acts combine with the tort feasor's negligence to bring about harm to an innocent party; they are merely concurrent causes." The same principle as to proximate causation is applicable under the count on breach of contract, asserted by the plaintiff in the capacity of a third party beneficiary. [281 So.2d at 526]
In Better Food Markets v. American Dist. Tel. Co., 40 Cal.2d 179, 253 P.2d 10 (1953), plaintiff sued in tort and contract for damages resulting from defendant's failure to respond promptly to burglar alarm signals as it had contracted to do. The form of analysis employed by the Supreme Court of California in reversing the judgment for defendant entered by the trial court is seen in the following language of its opinion at 253 P.2d at 13:
There is evidence upon which it could have been found that the loss was the proximate result of the defendant's delay in responding to the alarms. There was but one individual committing the burglary. He acted deliberately and there is reason to believe that the agreement between the parties was entered into with the intention of providing for the apprehension of such a person before he left the premises. The time and distance factors indicate that this particular burglar may have been caught had the police and guards been called to the premises a few minutes earlier, and that the delay of nine minutes after the safe had been opened permitted the escape. Such probabilities are to be weighed in the light of common experience in such matters and present a triable issue of fact. There was substantial evidence from which a jury could have found that *280 the plaintiff's loss was the proximate result of the defendant's breach of its contract. Therefore it was error for the trial court to order judgment for the defendant on its motion for a directed verdict.
The underlying operative principle in both these cases is that the security service will be held answerable for all reasonably foreseeable losses ensuing from the nonperformance by its employees of the security service's contractual undertakings. See also Gold Mills, Inc. v. Orbit Processing Corp., 121 N.J. Super. 370 (Law Div. 1972); Nicholas v. Miami Burglar Alarm Co., Inc., 339 So.2d 175 (Fla. 1976); Singer v. I.A. Durbin, Inc., 348 So.2d 370 (Fla. Dist. Ct. App. 1977); Cf. Home Ins. Co. v. Commercial & Ind. Sec. Serv., 57 Mich. App. 143, 225 N.W.2d 716 (Mich. Ct. App. 1974).
In view of the foregoing disposition it is unnecessary for us to decide plaintiff's contention that the trial court erred in refusing to impose liability on the basis of N.J.S.A. 45:19-15.
The order for summary judgment dated December 21, 1981 is vacated without remanding for further proceedings. The judgment in favor of plaintiff is modified so as to award damages in the amount of $118,000 and as modified the judgment is affirmed.