INHABITANTS OF TOWN OF FARMINGTON *vs.* WILLIAM F. MINER.
(Trial Docket Nos. 116 and 118.)

INHABITANTS OF TOWN OF FARMINGTON *vs.* WILLIAM F. MINER.
(Trial Docket No. 117.)

INHABITANTS OF TOWN OF FARMINGTON *vs.* J. A. BLAKE.

Franklin.    Opinion, October 27, 1934.

*Frank W. & Benjamin Butler*, for plaintiffs.
*Benjamin L. Berman,*
*David V. Berman,* for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

STURGIS, J.   In these actions, the Inhabitans of the Town of Farmington seek the restitution of public funds used and disbursed by the defendant, William F. Miner, while acting as superintendent of schools. The actions are brought in assumpsit on account annexed with the general money counts attached, and, with the consent of the parties, are reported on an agreed statement of facts. In accordance with the general rule, all technical questions of pleading must be deemed to be waived.

The case states that the public schools of Farmington are under the direct control of a school committee of five members who perform the duties and have the powers prescribed in Chapter 206 of the Private and Special Laws of 1891, except as the same have been further defined and modified by subsequent general legislation. Originally, this school committee elected the superintendent of schools of the town, fixed his compensation, and directed and supervised the performance of his duties. Pursuant, however, to the provisions of Chapter 188 of the Public Laws of 1917 and acts amendatory thereof, the town of Farmington was combined with the towns of New Vineyard and Temple into a school union, and a joint committee made up of the school committees of the several towns was organized as required by law. Since that time, the schools of Farmington have been under the supervision of the superintendent elected by the joint supervisory committee of the union. On June 29, 1927, the defendant, William F. Miner, who had been superintendent of the schools of Farmington since 1923, was elected superintendent of this union for a term of five years and on June 2, 1932, he was re-elected for a further term of two years. The instant suits concern his expenditures during these terms of office.

The first action reported, which is docketed in the trial court as two actions numbered 116 and 118 but argued here as one case, is assumpsit to recover moneys expended in the years 1928 to 1932 inclusive for taking a census of persons of school age in the town of Farmington. Under the general statutes then in force, superintendents of schools in the state were required to annually return to the school committees of the towns under their supervision and to the State Commissioner of Education a certified list of the names and ages of all persons in each of the towns between the

ages of five and twenty-one years, corrected to the first day of April. P. L. 1919, Chap. 83; R. S. Chap. 19, Sec. 56 and 57. Following the practice of former years, the defendant Miner, in making the school census of Farmington, employed one Frank Heminway to make a canvass of all persons of school age in the town and upon this census based his certified returns. The wages paid were the same as in previous years and the same person was employed. The claim now made is that it was the duty of the superintendent, under the statute, to personally make the annual school canvass and census, and the employment of another for that purpose at the expense of the town was unauthorized.

This contention can not be sustained. The school census is the basis of a large annual apportionment of state school funds to the several towns and cities. R. S. Chap 19, Sec. 213. All superintendents of schools in the state, union or otherwise, and regardless of the school population under their supervision, are required to certify these returns annually in order that the apportionment of state funds may be made as provided by law. To the end that this school census may be accurate and complete, it is provided that, if it appear that the census returns of any town have been inaccurately taken, the governor and council may require the census of such town to be retaken and returned and appoint persons to perform that service, "and such persons so appointed shall take the same oath, perform the same service and *receive the same compensation out of the same funds as the person or persons who took the school census in the first instance.*" R. S. Chap. 19, Sec. 57. In this provision, we find a legislative recognition of the well-known fact that in larger cities and towns, and in some of the school unions, it is entirely impractical, if not impossible, for the superintendents of schools to personally canvass the school population and attend to their other necessary supervisory duties, and, whenever it is necessary, they may employ other persons at the expense of the town to make the preliminary canvass for the annual school census. We are of opinion that recovery in the first actions reported is based on an erroneous construction of the law and must be denied.

In the next suit to be considered, the first item in the account annexed is for money which the defendant Miner drew as reim-

bursement for expenses incurred in attending a superintendents' convention. His bill for this disbursement was approved in advance by the school committee and paid from the treasury of the town on the order of the municipal officers. It does not appear in the case stated from what appropriations this money was drawn. It came to the superintendent in an order from the treasurer which included other items approved by the school committee and certified by the superintendent. It is true that it was not a proper charge against the state school funds nor money raised by the town for the support of the common schools by the per capita tax, nor money which the town is required to appropriate for the specific school purposes enumerated in R. S. (1916) ·Chap. 16, and R. S. (1930) Chap. 19. It always has been, however, and still is within the power of the municipalities to raise such amounts in addition to the required appropriations as they may deem necessary and proper. *Piper* v. *Moulton*, 72 Me., 155, 166; *Sawyer* v. *Gilmore*, 109 Me., 169, 174, 83 A., 673; Revised Statutes, Chap. 5, Sec. 78. The progress and advancement of our educational system demands trained superintendents, educated, experienced and in touch with modern school methods and practices, and it is now generally recognized that the conventions of superintendents, as well as teachers, have a real educational value and tend to promote the efficiency of those attending. Under the broad powers given towns to raise money for school purposes by our laws, we can not lay down the rule that the payment of the expenses of a superintendent to a convention is an illegal expenditure of public moneys. Nor can we assume that the school committee of Farmington approved the payment of the expenditure here questioned and the municipal officers drew orders for it on moneys which were not legally available for that purpose. If the contrary is true, it does not appear in the agreed statement and can not be here inferred.

The next item in the second action to be considered, is a charge against the defendant Miner for moneys which were paid him as an allowance for the use of his automobile in the performance of his official duties. When he was first elected superintendent of this school union, the joint committee of the towns apportioned his salary and added a travel allowance which they were not authorized to grant. R. S. Chap. 19, Sec. 64. However, each year during

the first term of the superintendent's appointment, the school committee of Farmington approved this charge and the municipal officers recognized its propriety by drawing orders on the treasury for its payment. Under the statutes then in force, the town was not compelled to make this payment. It had a right to do so, however, if it saw fit. It was not in itself an unlawful expenditure of public moneys. Again, the presumption favors the legality of the action of the school committee and the municipal officers of Farmington and is not rebutted.

The final charge in this second action is for money paid for the rent of an office for the superintendent. In Section 5 of Chapter 206 of the Private and Special Laws of 1891, the Act by which the school committee of Farmington was created as already noted in this opinion, is expressly provided that a suitable and convenient room shall be furnished by the town for the superintendent's office and the meetings of the school committee, wherein shall be kept their records. The agreed statement of facts shows that on April 8, 1926, when the defendant Miner was serving as superintendent of schools of Farmington and before the union now existing had been formed, the school committee, adopting his recommendation that the room in the high school building then used as an office was inadequate and needed for other purposes, authorized the superintendent to hire an apartment in the building of one E. W. Milliken and there equip and use one of the rooms for the office, paying the owner $15 a month as rent. Without further formal action, this arrangement was made and continued after Farmington was combined into the school union and until December, 1932, the rent being paid regularly to the owner on bills approved by the school committee and included in requisitions for which the municipal officers drew town orders. It was the duty of the town to furnish a suitable and convenient room for the superintendent's office and the meetings of the school committee. It is not made to appear, and we can not assume, that the municipal officers did not know that the room in the Milliken apartment was hired as an office when year after year they drew orders for the payment of the rent. It may be, as the case states, that they were not consulted about the matter and never formally approved it, but we think it must be inferred that they had full knowledge of what was

being done and acquiesced in it. Even if the superintendent of schools and the school committee did not have authority to hire and pay the rent of this office, the supplemental approving and ratifying action of the municipal officers binds the town. *Dennison* v. *Vinalhaven,* 100 Me., 136, 60 A., 798.

The final action reported is against the defendant, J. A. Blake, who is the owner of the building in which, since 1932, the superintendent of the union has maintained his office. Rent has been paid him just as it was to the owner of the Milliken apartment, and, seeking to recover it back, Farmington sues him instead of the superintendent. For the reasons already stated, recovery in this action must be denied.

In each of the cases brought forward on this Report, the mandate must be

*Judgment for the defendant.*